## WILLIAM R. STACY, Petitioner &c., *versus* GARD-NER P. LYON.

The *St.* 1809, *c.* 108, § 1, exempting schoolmasters from militia duty, extends to mas-ters of private schools. [See Revised Stat. *c.* 12, § 5.]

UPON a complaint brought before the Justices' Court for the county of Suffolk by the petitioner, as c.erk of a company of militia, against the respondent, for neglecting to attend several musters of that company in 1824, it was admitted by the parties, that the respondent was a schoolmaster in Boston, and regularly employed as such, when the supposed neglects took place ; that he instructed children in the common branches of education, namely, reading, writing, arithmetic, grammar, geography, history, natural philosophy, &c. ; that he occupied a schoolhouse, in which he was regularly employed from eight o'clock A. M. to one o'clock P. M. and from half-past two or three to five or six P. M. every day in the week, except Sunday ; that he instructed from twenty-five to thirty-five boys, and as many girls ; and that he was not employed by the municipal government of Boston, but kept a private school on his own account. The respondent was acquitted, and thereupon the complainant presented his petition to this Court for a writ of *certiorari* to the Justices' Court.

The case was argued before *Parker* C. J., who laid it before the whole Court.

*July* 1825.　　*Z. G. Whitman*, in support of the petition, cited *St.* 1785, *c.* 42, § 3, 4 ; *Commonwealth* v. *Dedham*, 16 Mass. R. 141.

*W. Phillips* and *Sewall*, *contrà*, referred to Com. Dig. *Uses*, *N* 3 ; *Prov. St.* 11 *Ann. c.* 1, § 7, (Anc. Chart. &c. 398) ; *Prov. Stat.* 5 *W. & M. c.* 7, § 12, (Anc. Chart. &c. 262) ; *St.* 1820, *c.* 16 ; *St.* 1789, *c.* 19 ; *Farnam's case*, 2 Leon. 186.

*March* 20*th.*　　PUTNAM J. delivered the opinion of the Court. The question in this case is, whether the respondent is exempted from performing duty as a soldier in the militia. The objection on the part of the petitioner is, that the respondent was not employed by the municipal government of the city of Boston, but that he only kept a private school on his own account.

The *St.* 1809, *c.* 108, § 1, exempts, among other persons, "officers and students of any college actually resident there, preceptors of academies and schoolmasters while actually employed as such." And it is argued, that the exemption is to be confined to masters of public schools and to officers of public or corporate institutions.

The words of the statute are general ; those who are schoolmasters are exempted ; and reference is had merely to the criterion of actual employment.

But if the words should be taken without any limitation, they would include masters who are employed to teach fencing and dancing, as well as those who are instructers in letters and morals. The *St.* 43 *Eliz. c.* 4, authorizes the appointment of commissioners to inquire of any breaches of trust in regard to grants for charitable purposes, and among such are mentioned " schools of learning "; and it has been decided that the statute does not extend to dancing or fencing schools. Com. Dig. *Uses, N* 3. But schools for writing, languages, music, mathematics, &c., are said to be schools of learning. Com. Dig. *ubi supra.* Among the proper subjects of instruction, the *St.* 1809, *c.* 108, § 1, intended to include those which were taught by the respondent, and all such other subjects as may be properly said to relate to morals and good literature. The people have manifested the greatest solicitude for the general dissemination of knowledge, from the first settlement of this country until the present day ; requiring that all who should be instructers should have the proper literary, as well as moral qualifications, including as well those who should teach children in their early ages in the first principles of reading, as those who should be employed in the instruction of children and youth of more advanced years in the higher branches of knowledge. *Vid. St.* 1789, *c.* 19.

No discrimination is made in the statute now under consideration, between those who should be employed by private individuals, or by corporations ; nor do we find any such distinction in any of the former statutes relating to the militia. By the colony law, (Anc. Chart. &c. 160,) " professed " schoolmasters are exempted ; and the same words are used

392

in *Prov. St.* 5 *W. & M. c.* 7. In the year 1776, during the revolutionary war, all the people were required to serve in person or by substitute, excepting only quakers, settled ministers of the gospel, the president, professors, tutors, librarian and undergraduates of Harvard College.    Anc. Chart. &c. 802. But that was at a time when we were contending with all our power for liberty and national existence.

By the first militia law which was made after the peace (*St.* 1793, *c.* 14, § 3) " stated schoolmasters " were exempted.    And so the law continued until *St.* 1799, *c.* 73, when by a new draft of the militia law, schoolmasters were not included among the exempts. It is to be observed, however, that the legislature did not by that act make any distinction between the teachers of public and of private schools. They were all called upon to quit their civil employments and serve in the militia. Whatever the regulation was, it applied to all of them, whether it exempted them by the general terms of *stated* or *professed* schoolmasters, or whether it deprived them of any exemption at all.

Ten years passed away before they were recognised (by *St.* 1809, *c.* 108) as the ancient and favored class of citizens, whose services were so continued, laborious, useful and necessary for the State, as to require a restoration of their former exemption.

Now it seems to us, that whether this subject be considered in regard to the masters, or to the scholars, or to the militia itself, there are many reasons to suppose that the legislature intended a general exemption.

In regard to the masters, their education and habits qualify them to command rather than to obey. It would be generally found that very good schoolmasters would make very poor soldiers. Their sedentary habits and literary occupation would almost disqualify them for the hardy and athletic duties of soldiers.

And in regard to the scholars, if they were to see their master attempting to execute the various military manœuvres required of soldiers, it would tend to lessen that veneration and respect for him, which should be indelibly impressed

on their minds. All those manœuvres are proper and graceful for a soldier or cadet, but not so becoming to the character of a grave instructer of youth. Such an exhibition would also have a tendency to impair his power of governing his scholars; and just so far as these effects would be in fact produced, the measure should be deprecated. And besides, the legislature might well suppose that it would be more useful for the scholars to be kept under the instruction and restraint of their masters, than to be ranging about without control among the spectators of the parade. Much evil both to body and mind may happen in the latter course, much good would certainly follow from the former.

And these reasons apply as well to private as to public schools. The respondent has a number of scholars, probably equal to the average number of those in the public schools. In some towns, the number of scholars in the private school is probably twice as great as in the town school. If it be true that the great object is to have the children and youth instructed, what reason is there for letting loose the scholars of the private schools, which might not as well be applied to those of the town schools?

And as to the militia itself, it might well be supposed by the legislature, that no very effective aid would be realized, if the schoolmasters were thrown into the ranks. It would be found, with but very few exceptions, that they would do the duty in an unsoldierlike and awkward manner, and their best efforts would be feeble, compared with those of the hardy men who are accustomed to bear arms. Generally the schoolmasters would not attempt to do the duty; many of them, because they could not do it; but most of them would refuse from a regard to the gravity of their employment, and to prevent the pain of exhibiting themselves in a situation which might excite the ridicule of their scholars. The operation would be in most cases to compel schoolmasters to pay their fines. But that result we think could not have been intended by the legislature. The services which they render are exceedingly important and fatiguing, and they are not generally so well compensated as to make it reasonable to require fines, n lieu of services from them as soldiers.

**394**

Whether this case be considered in reference to the words of the statute, or according to the reason and expediency of the provision, our opinion is, that the respondent is not liable to duty in the militia. The petitioner is therefore to take nothing by his petition.